UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J & J SPORTS PRODUCTIONS, INC.,

        Plaintiff,        No. 2:11-cv-15003

vs.        Hon. Gerald E. Rosen

TEE'S INC., a Michigan Corporation,
d/b/a MAN DEE'S LOUNGE,
ALVIN W. TAYLOR, Individually,
Jointly, and Severally,

        Defendants,

and

TEE'S INC., a Michigan Corporation,
d/b/a MAN DEE'S LOUNGE,
ALVIN W. TAYLOR, Individually,
Jointly, and Severally,

    Defendants and Third Party Plaintiffs,

vs.

COMCAST OF MICHIGAN, LLC,

    Third Party Defendant.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

    On November 11, 2011, Plaintiff J & J Sports Productions, Inc., filed the instant law suit against Tee's Inc., d/b/a Man Dee's Lounge, and Alvin W. Taylor, the purported owner of Tee's Inc. and Man Dee's Lounge (hereinafter "Defendants"). Plaintiff alleges

1

(i) unauthorized publication or use of communications in violation of 47 U.S.C. § 605; (ii) unauthorized reception of cable service in violation of 47 U.S.C. § 553; and (iii) conversion. On January 9, 2012, Defendants filed (i) an answer denying Plaintiff's allegations and (ii) a third party complaint against Comcast, alleging that Comcast is liable for any sum Defendants are required to pay as a result of this suit.

On August 30, 2012, Plaintiff moved for summary judgment in its favor and against Defendants on Count II - Violation of 47 U.S.C. § 553, seeking (i) statutory damages of $10,000; (ii) enhanced damages of $50,000; and (iii) attorneys' fees and costs of $6,783.50, for a total damages request of $66,783.50. Defendants request that this Court deny Plaintiff's motion and any costs or attorneys' fees.

Having reviewed the briefs, supporting exhibits, and the entire record of this matter, the Court finds that the pertinent facts and legal contentions are sufficiently presented in these materials, and that oral argument would not assist in the resolution of this matter. Accordingly, pursuant to Eastern District of Michigan Local Rule 7.1, the Court will decide Plaintiff's motion "on the briefs." This Opinion and Order sets forth the Court's ruling.

## II. FACTUAL BACKGROUND

Defendants operate Man Dee's Lounge, a bar with a single big screen television. Sometime in 2005, Defendants entered into a commercial cable contract with Comcast. The record does not contain any evidence of the terms of that contract, and Comcast has

2

no record of Defendants' agreement to the terms of Comcast's "business class service agreement." Defs.' Resp., Ex. C.

On July 28, 2009, Plaintiff J & J Sports Productions, Inc. -- a closed-circuit distributor of sports and entertainment programing -- entered into an exclusive licensing agreement to exhibit *Fire Power: Manny Pacquiao v. Miguel Cotto, WBO Welterweight Championship Fight* (hereinafter "The Fight"), which was to be broadcast on November 14, 2009. Under the agreement, Plaintiff possessed the exclusive right to sublicense The Fight to commercial entities -- such as bars, clubs, and lounges -- in the United States.

On November 14, 2009 -- the night of The Fight -- Defendants called Comcast, their cable provider, to order The Fight. Even though Comcast did not have the right to distribute The Fight -- that right was reserved to Plaintiff under its licensing agreement -- Comcast provided Defendants with The Fight for the residential rate of $54.95. There is nothing in the record that illuminates the contents of this phone conversation or indicates that Comcast warned Defendants that it did not have the right to sublicense The Fight to commercial entities. The commercial rate Plaintiff would have charged for The Fight was $4,200.

### III. DISCUSSION

**A. Summary Judgment Standard**

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As the Supreme Court has explained, "the plain language of Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and

3

upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In addition, where a moving party -- here, the Plaintiff -- seeks an award of summary judgment in its favor on a claim or issue as to which it bears the burden of proof at trial, the moving party's "showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (internal quotation marks, citation, and emphasis omitted). Plaintiff cannot meet this burden unless it can point to facts in the record that "specify the basis upon which summary judgment should be granted and identify portions of the record which demonstrate the absence of a genuine issue of material fact." *Gendron v. CSX Transp., Inc.*, No. 1:06-cv-639, 2008 WL 321216, at *1 (W.D. Mich. Feb. 4, 2008).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party may not rely on mere allegations or denials, but must "cit[e] to particular parts of materials in the record" as establishing that one or more material facts are "genuinely disputed." Fed. R. Civ. P. 56(c)(1). But "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

**B. Violation of 47 U.S.C. § 553**

Plaintiff moves for summary judgment on Defendants' purported violation of 47 U.S.C. § 553, which provides:

> (1) No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.

47 U.S.C. § 553(a)(1).

It is undisputed that (i) Plaintiff obtained exclusive rights to distribute The Fight to commercial entities, (ii) Defendants were a commercial entity at the time of the The Fight, and (iii) Defendants purchased The Fight from Comcast, which was not authorized to provide the The Fight to commercial entities. The question is whether simply receiving The Fight from an unauthorized cable provider violates § 553. Plaintiff argues that it does. Defendants argue that they did not violate the statute because they were "specifically authorized to [receive such cable services] by a cable operator," *i.e.*, Comcast. If Comcast "specifically authorized" Defendants' receipt of the transaction, as required by § 553, then the statute was not violated and Defendants cannot be held liable for their actions.

Thus, the issue is not whether Defendants received the cable communication, but whether such reception was "specifically authorized" by a cable operator. In *J & J Productions, Inc. v. Schmalz*, the Southern District of Ohio confronted facts nearly identical to the case at hand. 745 F. Supp. 2d 844, 851 (S.D. Ohio 2010). Relying on the plain language of § 553, the court noted that the statute allows receipt of cable

5

communications when "specifically authorized to do so by a cable operator" -- rather than when "specifically authorized to do so by an *authorized* cable operator." Because the language § 553 does not specifically require the cable operator to be an "authorized" cable operator, the court held that § 553 does not apply to commercial customers who did not know, nor reasonably could have known, that the operator lacked the right to license that program.

In *Joe Hand Promotions, Inc. v. Phoenix Promotions, LLC*, the Eastern District of Michigan distinguished *Schmalz*, not as a matter of statutory interpretation, but on the facts of the case. No. 10-15102, 2012 WL 3025107, at *1 (E.D. Mich. July 24, 2012). In *Phoenix*, the customer's contract with Comcast (i) specifically stated that Comcast does not have the right to distribute certain pay-per-view programming to commercial establishments and (ii) required the customer to obtain explicit, written authorization from both Comcast and the applicable event distributor (*i.e.*, here, J & J Sports Productions), before displaying such content at its commercial establishment. Because Defendants signed a service order with a link to these terms and conditions, the court held that "Defendants knew or reasonably should have been aware that Comcast was not in a position to authorize it to transmit the Program." *Id.* at *3. Further, the detailed process for obtaining the proper rights -- which included written authorization from the event distributor -- should have placed Defendant on notice that mere over-the-phone approval was insufficient to constitute "specific authorization" under § 553. *Id. See also, e.g.*, *J & J Sports Productions, Inc. v. TCOS Enterprises, Inc.*, Civil Action No. 10-7130, 2012 WL 124482, at *2 (E.D. Pa. Jan. 13, 2012) ("Comcast explicitly informed the Flat Rock

6

Saloon through its terms of service that it did not 'have the absolute right to distribute pay-per-view video programming . . . to commercial establishments. . . . Therefore, the bar was not 'specifically authorized' to receive the cable transmission under Section 553."); *J and J Sports Productions v. Coyne*, 857 F. Supp. 2d 909 (N.D. Cal. 2012) (same).

Thus, the test for whether a commercial establishment was "specifically authorized to [receive cable services] by a cable operator" is whether the facts demonstrate that Defendants knew or reasonably should have been aware that the cable operator lacked authority to provide the cable service. The record in this case contains insufficient facts to support such a finding. Unlike *Phoenix, TCOS Enterprises*, and *Coyne*, neither party has presented any evidence that Defendants were informed of potential limitations on Comcast's ability to provide cable services. Neither Plaintiff, nor Defendants, nor Comcast have been able to provide a copy of Defendants' purported business class service agreement with Comcast. Further, no party has offered any evidence detailing what the terms of such an agreement might have been. Indeed, Plaintiff does not even assert that Defendants were provided notice of Comcast's limitations.

The best evidence to support Plaintiff's motion is a copy of Defendants' cable bill from the month of The Fight, which lists Defendants as commercial customers and demonstrates that they paid the residential rate for The Fight. However, the bill itself does not contain any terms or conditions notifying Defendants of Comcast's limited license, and does not provide any information on where such terms and conditions might

be located. And while it may be highly likely that Defendants signed Comcast's traditional commercial cable agreement -- and that the agreement notified Defendants of Comcast's limitations -- on a motion for summary judgment, this Court must view the facts on the record in the light most favorable to the nonmoving party and draw all inferences in that party's favor. *Pack*, 434 F.3d at 813. Absent any evidence detailing (i) that Defendants signed an agreement and (ii) that the terms of that agreement notified Defendants that Comcast might lack the authority to provide certain cable services, Plaintiff cannot establish that Defendants received notice of Comcast's licensing limitations. Thus, Plaintiff's showing is insufficient "for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone*, 799 F.2d at 259 (internal quotation marks, citation, and emphasis omitted).

## IV. CONCLUSION

For the foregoing reasons,

IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment on the issue of Defendants' violation of 47 U.S.C. § 553 is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment on the issue of willfulness, and Plaintiff's request for damages and attorneys' fees, are DENIED as MOOT.

**IT IS SO ORDERED.**

**Dated: December 12, 2012**         s/Gerald E. Rosen
                                      **GERALD E. ROSEN**
                                      **CHIEF JUDGE, U.S. DISTRICT COURT**

**I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, Wednesday, December 12, 2012, by electronic and/or ordinary mail.**

                                            **s/Julie Owens**
                                            **Case Manager, (313) 234-5135**